**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| COMMUNITY MANAGEMENT, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COLONY INSURANCE COMPANY | ) |
| | ) |
| Defendant. | ) |

## COMMUNITY MANAGEMENT, LLC'S ORIGINAL COMPLAINT

Plaintiff, COMMUNITY MANAGEMENT, LLC ("Community Management") files this Complaint against COLONY INSURANCE COMPANY ("Colony"), and states as follows:

## PARTIES

1. Community Management, LLC is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas.

2. Colony Insurance Company is a surplus lines insurer organized and existing under the laws of the State of Virginia with its principal place of business at 8720 Stony Point Parkway, Suite 400, Richmond, Virginia 23235. Colony may be served through the Texas Commissioner of Insurance, as Colony's agent for service of process, at 333 Guadalupe Street, Austin, Texas 78701.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in this District because a substantial part of the events and acts or omissions giving rise to these claims occurred in this District within the meaning of 28 U.S.C. § 1391.

## THE POLICY

5. Colony issued commercial property policy number HHC 2000076 00, effective August 15, 2017 to August 15, 2018 (the "Policy") to Plaintiff, Community Management. The Policy is attached as Exhibit A. The only insured location on the Policy is the Villas at Cypresswood apartment complex ("VAC"), located at 9844 Cypresswood Drive, Houston, Texas 77070. (ECF 1-1, p. 6). The Policy provides Building and Personal Property coverage in the amount of $23,088,000 and Business Income Including Rental Value coverage of $3,876,000. (*Id.*, p. 7). The Policy's Texas Causes of Loss Comprehensive Form states that the Policy covers losses resulting from all "RISKS OF DIRECT PHYSICAL LOSS," unless otherwise excluded by the Policy. (*Id.*, p. 73). The Texas Causes of Loss Form removes the Flood Exclusion if Flood-Optional Coverage is selected in the Declarations. (*Id.*). The Policy's declaration page states that the Policy provides flood coverage. (*Id.*, p. 7). Therefore, flood is a covered cause of loss under the Policy.

## FACTS GIVING RISE TO CONTROVERSY

6. Hurricane Harvey hit Houston on August 26, 2017, causing widespread flooding in the area. As a result of the Hurricane Harvey flooding, approximately 260 apartment units at

VAC were ruined. All of the damage at VAC was the result of surface water from Hurricane Harvey entering the apartments from the ground.

7. Community Management submitted its claim shortly after Hurricane Harvey, and Colony assigned Innovative Risk Management ("IRM") to handle the claim as Colony's third-party administrator.

8. In the two years that preceded Hurricane Harvey, VAC averaged 94.5% occupancy. Just before Hurricane Harvey, in August 2017, VAC had a 97% occupancy rate, with 263 of its 270 units occupied. The following month, in September 2017, occupancy dropped to 60%, and vacancies increased from 7 units to **107** units. Anticipating this loss of income, when Community Management filed its claim, it submitted a claim for lost business/rental income, as provided for under the Policy.

9. On September 1, 2017, Christina Camp with IRM e-mailed Virgil Benton with Community Management and notified him that the Policy covered losses resulting from flood. This email is attached as Exhibit B. Ms. Camp represented to Community Management that all losses resulting from flood would be subject to the Policy's $25,000 flood deductible. The Policy contains a Named Storm Percentage Deductible Endorsement ("Named Storm Endorsement") specifying a deductible of 3% of the building's insured value. But Colony expressly represented to Community Management, through IRM, that *the [3%] Named Storm Deductible would only apply to "any loss [Community Management] sustained from the hurricane that did not resort [sic] from surface water (water entering the apartments from the ground)."* (Ex. B) (emphasis added).

10. In a November 6, 2017 letter from IRM, Colony accepted coverage under the Policy for the property damage resulting from flood. Colony applied the $25,000 flood

deductible to the property damage loss for the obvious reason that the flood deductible is the deductible that applies to losses attributable flood. This letter is attached as Exhibit C. Because the damage was well in excess of the $250,000 flood sublimit, Colony absorbed the $25,000 flood deductible and issued payment for $275,000, which constituted the entire $250,000 flood sublimit plus an additional $25,000 "Catastrophe Allowance," as provided under the Policy. However, Colony denied coverage for any damages exceeding the $250,000 flood sublimit, including Community Management's claim for lost business/rental income.

11. In late 2018, Community Management retained the undersigned counsel to review Colony and IRM's handling and denial of Community Management's business income claim. On January 21, 2019, the undersigned counsel sent a letter to Colony, on behalf of Community Management, explaining that Colony had improperly denied coverage because Community Management's claim for lost business/rental income was subject to the Policy's $3,786,000 limit for Business Income Including Rental Income, not the $250,000 flood sublimit.

12. Nearly three months later, and over seventeen months after Hurricane Harvey made landfall, Colony sent a letter to Community Management on April 5, 2019, admitting that the Policy's $3,876,000 limit for Business Income Including Rental Value applied to Community Management's claim for lost business/rental income and requesting additional information to support Community Management's claim. This letter is attached as Exhibit D. However, for the first time (and contrary to the September 1, 2017 e-mail from IRM), Colony now took the position that the Policy's 3% deductible under the Named Storm Endorsement, which is *$667,640* higher than the $25,000 flood deductible, applied to the business income loss. Colony reiterated this position in a letter dated May 7, 2019, which is attached as Exhibit E.

13. Community Management calculated its business income loss to be $1,426,604 and has since provided all information necessary to support that calculation to Colony. Colony engaged Assurance Forensic Accounting ("Assurance") to make its own calculation of the loss. In a July 12, 2019 letter to Community Management's undersigned counsel, counsel for Colony provided a report from Assurance, in which Colony stipulated a business income loss of at least $1,042,361. This letter is attached as Exhibit F. Community Management reserves the right to contest that calculation in a separate appraisal proceeding pursuant to the appraisal provision in the Policy.

14. However, in that same July 12, 2019 letter, Colony improperly applied the deductible under the Named Storm Endorsement, which is 3% of the $23,088,000 insured value of VAC, or $692,640. Subtracting that deductible from Colony's calculation of Community Management's business income loss, Colony issued Community Management a check for $349,721. (Ex. F). Colony's improper application of the 3% deductible under the Named Storm Endorsement, years after receiving Community Management's claim, is at the center of this dispute and request for declaratory judgment.

## BASIS FOR DECLARATORY JUDGMENT

15. Colony's original representation to Community Management—that the 3% deductible under the Named Storm Endorsement would not apply to losses attributable to flood—comports with the overall structure of the Policy and the express terms of the Multiple Deductible Form Endorsement and the Named Storm Endorsement.

16. The Business Income Coverage Form that provides coverage for Community Management's lost business/rental income claim does not address the application of a deductible. (ECF 1-1, pp. 66-67). Therefore, the rest of the Policy must be reviewed to determine if a

deductible applies to business income claims and if so, what the amount of that deductible is. As can be seen below in the highlighted portions of the Multiple Deductible Form Endorsement, that endorsement clearly and unambiguously states that it modifies and applies to the "Business Income Coverage Form." (*Id.*, p. 48). The Schedule, in turn, specifies a $25,000 deductible, which applies to losses attributable to "Flood." (*Id.*)

**Policy Number:** HHC 2000076 00

**COMMERCIAL PROPERTY FORM AP 00 16 02 08**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### MULTIPLE DEDUCTIBLE FORM

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
**BUSINESS INCOME COVERAGE FORM**
EXTRA EXPENSE COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
CAUSES OF LOSS WATER FORM
CAUSES OF LOSS EARTHQUAKE FORM

### SCHEDULE

Notwithstanding any other Deductible provisions to the contrary in the above Coverage Forms, the deductible(s) shown below are applicable to each location covered by this policy individually in the event more than one location is involved in an occurrence that results in a covered loss or losses.

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss |
|---|---|---|---|
| 001 | 001 | $10,000 | 2 |
| | | $25,000 | 3 |
| | | **$25,000** | **4** |
| | | $25,000 | 5 |

For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

1) All Covered Causes of Loss except Earth Movement and Flood.
2) All Covered Causes of Loss except Earth Movement, Flood and Windstorm or Hail.
3) Windstorm or Hail.
4) **Flood.**
5) Earth Movement.

Page 1 of 1                                                           Form AP 00 16 02 08

17. The Named Storm Endorsement, on the other hand, expressly provides that if the Policy includes flood coverage, a separate flood deductible applies to "losses or damage attributable to Flood." (ECF 1-1, p. 83). Moreover, unlike the Multiple Deductible Form Endorsement, the Named Storm Endorsement does not purport to modify the Business Income Coverage Form.

POLICY NUMBER: HHC 2000076 00

COMMERCIAL PROPERTY
HM 00 01 05 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NAMED STORM PERCENTAGE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUILDERS' RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
TOBACCO SALES WAREHOUSES COVERAGE FORM

**SCHEDULE**

| Premises Number | Named Storm Deductible Percentage – Enter 1%, 2%, 3%, 4%, Or 5% |
|---|---|
| LOC 001   BLD 001 | 3% |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A Named Storm is a storm system that has been identified as a tropical storm or hurricane and assigned a name by the National Hurricane Center or the Central Pacific Hurricane Center of the National Weather Service (hereafter referred to as NHC and CPHC). Under the terms of this endorsement, a Named Storm begins at the time a Watch or Warning is issued by the NHC or CPHC for the area in which the affected premises are located, and ends 72 hours after the termination of the last Watch or Warning issued for that area by the NHC or CPHC.

The Named Storm Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by each Named Storm. If there is covered loss or damage from a windstorm that is not a Named Storm, the applicable deductible is the same deductible that applies to Fire, unless a different deductible is stated elsewhere in this policy for such loss or damage.

Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of the Water Exclusion or any other exclusion in this policy. If this policy is endorsed to cover Flood under the Flood Coverage Endorsement (or if you have a flood insurance policy), a separate Flood Deductible applies to loss or damage attributable to Flood, in accordance with the terms of that endorsement or policy.

As used in this endorsement, the term "blanket insurance" has the following meaning: Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) of Insurance are shown in the Declarations.

HM 00 01 05 11

Includes copyrighted material of Insurance Services Office, Inc.

Page 1 of 2 ☐

18. Based on the unequivocal terms of the above endorsements to the Policy, it is clear that the $25,000 flood deductible, not the 3% deductible under the Named Storm Endorsement, applies to Community Management's business income claim.

## CAUSES OF ACTION

Each of the foregoing paragraphs is incorporated by reference in the following causes of action.

### I. DECLARATORY JUDGMENT

19. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, the Federal Declaratory Judgment Act.

20. An actual controversy of a judicial nature exists between Community Management and Colony involving the rights and obligations under the Policy. The resolution of this controversy is dependent upon an analysis of the Policy and the facts and circumstances surrounding Community Management's claim under the Policy.

21. Community Management has complied with all conditions precedent to coverage under the Policy.

22. Community Management is entitled to a declaration from this Court that the $25,000 flood deductible, not the $692,640 deductible under the Named Storm Endorsement, applies to Community Management's business income loss attributable to flood.

### II. BREACH OF CONTRACT

23. Colony entered into a contract for insurance with Community Management.

24. Community Management has complied with all conditions precedent to coverage under the Policy issued by Colony.

25.     The Multiple Deductible Form Endorsement in the Colony Policy clearly and unambiguously specifies that it applies to the "Business Income Coverage Form" and that a $25,000 deductible applies to losses attributable to "Flood." (ECF 1-1, p. 48). On the other hand, the Named Storm Endorsement expressly provides that if the Policy includes flood coverage, which it does, a separate flood deductible applies to "losses or damage attributable to Flood." (*Id.*, p. 83).

26.     The terms of the Colony Policy provide coverage to Community Management for its business income loss caused by the Hurricane Harvey flooding, and the Policy clearly specifies that a $25,000 deductible applies to that loss. Despite this, Colony has refused to apply the correct deductible and, as a result, has failed and refused to fulfill its obligation to fully indemnify Community Management for its business income loss.

27.     The failure of Colony to fulfill its contractual obligations constitutes a material breach of the insurance contract, which has caused and will continue to cause damage to Community Management.

### III.    UNFAIR CLAIMS SETTLEMENT PRACTICES

28.     Colony violated § 541.060 of the Texas Insurance Code by:

a.   Refusing to pay a claim without conducting a reasonable investigation with respect to the claim;

b.   Misrepresenting to a claimant a material fact or policy provision relating to the coverage at issue;

c.   Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which Colony's liability has become reasonably clear; and

   d. Failing to promptly provide to Community Management a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for Colony's denial of a claim or offer of a compromise settlement of a claim.

29. Colony also violated § 541.061 of the Texas Insurance Code by:

   a. Making an untrue statement of material fact regarding the coverage available under the policies;

   b. Failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

   c. Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of material fact; and

   d. Making a material misstatement of law.

30. Specifically, on September 1, 2017, Colony, through IRM, represented that the 3% deductible under the Named Storm Endorsement would not apply to Community Management's losses attributable to surface water entering from the ground. (Ex. B). Instead, Colony, through IRM, represented to Community Management that the $25,000 flood deductible would apply to losses attributable to flooding, i.e., surface water entering from the ground. (*Id.*).

31. There is no dispute that all of Community Management's losses were caused by surface water flooding from Hurricane Harvey.

32. Colony acknowledged this fact on November 6, 2017, when it stated that Community Management's claim "revealed damages ***as a result of flooding*** due to Hurricane Harvey" and then proceeded to apply the $25,000 flood deductible. (Ex. C) (emphasis added).

33. However, when faced with a covered business income loss in excess of $1,000,000, on April 5, 2019, Colony stated for the first time that an entirely different and significantly higher deductible—the 3% deductible under the Named Storm Endorsement—applied to Community Management's business income loss arising out of the exact same cause of loss: flooding due to Hurricane Harvey. (Ex. D).

34. On May 7, 2019, Colony again admitted that "[a]ll of the *flooding* which caused [Community Management's] loss apparently arose either directly or indirectly out of Hurricane Harvey . . . ." (Ex. E, p. 3) (emphasis added). However, in that same letter, Colony stated that the 3% deductible applied because Hurricane Harvey "was assigned that name by the National Hurricane Center," even though the Named Storm Endorsement explicitly carves out losses attributable to flood as set out above. (*Id.*).

35. On May 23, 2019, Community Management reminded Colony of its prior handling of this claim in 2017, including the representations by IRM and Colony's application of the $25,000 flood deductible. Moreover, Community Management explained how Colony's insistence on applying the 3% deductible ignored both the terms of the Multiple Deductible Form Endorsement and Named Storm Endorsement, as well as the overall structure of the Policy, in contravention of well-established Texas rules of insurance policy interpretation. *Gastar Exploration Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)). Colony never responded to this letter.

36. Instead, on July 12, 2019, Colony repeated that the 3% deductible under the Named Storm Endorsement applied to Community Management's business income loss and

issued a partial payment of Community Management's business income loss based on the incorrect application of the 3% deductible. (Ex. F).

37. Colony's April 5, 2019, May 7, 2019, and July 12, 2019 misstatements regarding the application of the 3% deductible under the Named Storm Endorsement directly contradict (1) the plain language of the Multiple Deductible Form Endorsement and the Named Storm Endorsement; (2) Colony's September 1, 2017, and November 6, 2017 representations and prior handling of this claim; and (3) Texas law on insurance policy interpretation.

38. As a result of Colony's deceptive acts and practices as set out in paragraphs 28 through 37, Community Management has suffered actual damages in an amount not less than $667,640.

39. In light of Colony's written representations and prior handling of this claim in 2017, Colony's acts and practices set out in paragraphs 28 through 37 were knowingly committed, and as a result, Community Management seeks trebled damages under § 541.152(b) of the Texas Insurance Code.

### IV.   **VIOLATION OF PROMPT PAYMENT OF CLAIMS ACT**

40. Colony violated §§ 542.058 and 542.059(b) of the Texas Insurance Code by failing to promptly pay Community Management's business income loss, for which Community Management seeks recovery of the statutory penalties set forth in Chapter 542 of the Texas Insurance Code.

### V.   **ARBITRATION PROVISION**

41. As set forth in paragraph 13 above, there is a difference of opinion regarding the amount of Community Management's business income loss.

42. The Policy contains a Mandatory Binding Arbitration Endorsement that applies if Colony and Community Management disagree on "the amount of the loss, or have any other disagreement or dispute relating to or arising out of appraisal." (ECF 1-1, p. 91).

**MANDATORY BINDING ARBITRATION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**THIS ENDORSEMENT MODIFIES COVERAGE UNDER THE FOLLOWING:**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**CAUSES OF LOSS COMPREHENSIVE FORM**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, G. Loss Conditions, 2. Appraisal** is hereby deleted in its entirety and replaced with the following:

1. If we and you (each a "party") disagree on the value of the property or the amount of the loss, or have any other disagreement or dispute relating to or arising out of appraisal, it is mutually agreed that any and all such disagreements and/or disputes shall be submitted to mandatory binding arbitration as the sole and exclusive remedy. The terms of this Endorsement shall apply to all such disputes without reference to when they arise, including after expiration or termination of this policy.

2. The party initiating arbitration shall notify the other party in writing of its demand for arbitration together with the identity of the initiating party's chosen Arbitrator. The non-initiating party shall then have thirty (30) days to respond to the initiating party with written notice of the identity of its Arbitrator. The two Arbitrators selected shall then choose a third Arbitrator to act as an Umpire. If the two Arbitrators fail to agree on an Umpire after thirty (30) days, each Arbitrator shall submit a list of three (3) proposed individuals. Each Arbitrator shall choose one (1) name from the other Arbitrator's list and the resulting two (2) names shall be subject to a draw by lots of one name, who shall then serve as Umpire.

3. The dispute shall be submitted to the panel comprised of the three (3) Arbitrators by oral and written evidence at a hearing the time and location of which shall be determined by the Umpire. All arbitrations shall be held in the County mutually agreed to by the parties in writing, or as required by law. The Arbitration panel shall have authority and jurisdiction to resolve disputes, if any, regarding whether the matters before them are properly arbitrable. Within sixty (60) days of the appointment of the Umpire, each party shall submit a written settlement offer to the arbitration panel, setting forth the terms which such party would be willing to accept in final settlement of the dispute or disagreement. The arbitration panel may, in its sole discretion, conduct a hearing on each party's offer, during which each party may present evidence. If conducting hearings, the Arbitrators shall be relieved of all judicial formalities, shall not be required to adhere to the strict rules of evidence, and shall not apply the doctrine of *contra proferentem* or otherwise construe this policy or any document received in evidence for or against either party based upon the identity of its drafter.

HH 00 22 TX 04 15          Page 1 of 2

43. Thus, if Community Management elects to pursue its right to challenge Colony's calculation of the total amount of the business income loss, that dispute may be subject to a separate appraisal process and/or arbitration under the Mandatory Binding Arbitration Endorsement.

44. However, Community Management is not disputing the total amount of its business income loss in this declaratory judgment action. Instead, Community Management's claims against Colony in this action relate solely to the interpretation of the Policy's Multiple Deductible Form Endorsement and Named Storm Endorsement. By its terms, the Mandatory Binding Arbitration Endorsement has no application when the dispute is strictly a matter of policy interpretation, as is the case here.

45. Moreover, like the Named Storm Endorsement, the Mandatory Binding Arbitration Endorsement does not purport to modify the Business Income Coverage Form. So on its face, it is not clear that the terms of the Mandatory Binding Arbitration Endorsement even apply to claims for lost business income.

46. Therefore, Community Management's claims against Colony for declaratory judgment, breach of contract, and violations of Chapters 541 and 542 of the Texas Insurance Code set out above do not fall within the terms of the Policy's Mandatory Binding Arbitration Endorsement.

## VI. ATTORNEY'S FEES

47. Colony retained the services of the law firm of Cokinos | Young and has agreed to pay Cokinos | Young a reasonable fee for its services necessarily rendered and to be rendered in this action. Subject to the provisions in Chapter 542A of the Texas Insurance Code, Community Management is entitled to an award of its reasonable and necessary fees in an amount to be

established at trial pursuant to §§ 38.001, *et seq.* of the Tex. Civ. Prac. & Rem. Code (Breach of Contract), § 541.152 of the Texas Insurance Code (Unfair Claims Settlement Practices), § 542.060 of the Texas Insurance Code (Prompt Payment of Claims).

## **PRAYER**

WHEREFORE, Community Management respectfully prays for the following relief:

(1) For a declaration that the $25,000 flood deductible under the Multiple Deductible Form Endorsement applies to Community Management's business income loss caused by the Hurricane Harvey flooding;

(2) For a declaration that the 3% deductible under the Named Storm Percentage Deductible Endorsement does not apply to Community Management's business income loss caused by the Hurricane Harvey flooding;

(3) Judgment that Colony breached its insurance contract with Community Management and that Community Management is entitled to its damages as a result of this breach of contract;

(4) Judgment that Community Management is entitled to recover statutory damages, including treble damages under Chapter 541 of the Texas Insurance Code, as well as damages under Chapter 542 of the Texas Insurance Code;

(5) Judgment that Community Management is entitled to recover its costs, expenses, and attorney's fees incurred in pursuing this action for coverage;

(6) Judgement awarding Community Management pre-judgment and post-judgment interest as allowed by law; and

(7) For such other and further relief to which Community Management is justly entitled, in law or in equity.

Respectfully submitted,

COKINOS | YOUNG

By: */s/ Travis M. Brown*
    Patrick J. Wielinski
    State Bar No. 21432450
    Travis M. Brown
    State Bar No. 24046885
    Amy N. Rauch
    State Bar No. 24091233
    800 Crestview Tower
    105 Decker Court
    Irving, TX 75062
    Telephone: (817) 635-3600
    Facsimile: (817) 635-3633
    Email: pwielinski@cokinoslaw.com
           tbrown@cokinoslaw.com
           arauch@cokinoslaw.com

    Craig H. Clendenin
    State Bar No. 04375000
    Four Houston Center
    1221 Lamar Street, 16th Floor
    Houston, Texas 77010-3039
    Telephone: (713) 535-5500
    Facsimile: (713) 535-5533
    Email: cclendenin@cokinoslaw.com

    ATTORNEYS FOR PLAINTIFF
    COMMUNITY MANAGEMENT, LLC

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Community Management, LLC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Patrick J. Wielinski, Travis M. Brown, Amy N. Rauch, Craig H. Clendenin
Cokinos Young, 105 Decker Ct., Ste. 800, Irving, TX 75062
817-635-3619

## DEFENDANTS
Colony Insurance Company

County of Residence of First Listed Defendant   Chesterfield County, VA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|                                   | PTF | DEF |                                                      | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State             | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State          | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                       | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332;  28 U.S.C. §§ 2201, 2202
Brief description of cause:
Declaratory judgment; breach of contract; Texas Ins. Code claims under commercial property insurance policy.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** _____
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   08/26/2019
SIGNATURE OF ATTORNEY OF RECORD   Travis M. Brown

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE